# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF PUERTO RICO

In re:                                                    Case No. 04-04781 (MWV)
                                                          Chapter 11

Maxon Engineering Services, Inc.,
                    Debtor

United States Fidelity & Guaranty Company
                    Movant
v.

Maxon Engineering Services, Inc.,
                    Respondent

*Charles P. Gilmore, Esq.*
*Patrick D. O'Neill, Esq.*
*O'NEILL & GILMORE, PSC*
*Attorneys for the Movant*

*Carmen C. Conde, Esq.*
*C. CONDE & ASSOC.*
*Attorney for the Debtor*

*Brain K. Tester, Esq.*
*FIDDLER GONZÁLEZ & RODRÍGUEZ, PSC*
*Attorney for Party in Interest*
*Banco Bilbao Vizcaya Argentaria Puerto Rico*

## MEMORANDUM OPINION

The Court has before it a motion for adequate protection filed by creditor United States Fidelity & Guaranty Company (the "Movant"), in which the Movant seeks adequate protection of its interest in the contract receivables on projects bonded by the Movant.  The Movant seeks an order granting adequate protection by requiring the Debtor to segregate the bonded contract proceeds on a project by project basis, so that the funds on a particular project are to be used solely to discharge the Debtor's obligations on that same project.   In the motion, the Movant also objects to the motions filed by the Debtor to assume four contracts on which the Movant issued payment and performance bonds.  The Debtor opposed the

Movant's request on August 13, 2004, and secured creditor Banco Bilbao Vizcaya Argentaria Puerto Rico

("BBVA") filed its position on the Movant's request on October 5, 2004.

On August 26, 2004, a hearing was held on the motion, and the hearing was continued to

October 8, 2004.   At the conclusion of the hearing, the Court took the matter under advisement.   For the

reasons set out below, the Movant's request for adequate protection is granted.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334

and 157(a) and the "Standing Order of Resolution for Bankruptcy Cases" dated July 19, 1984 (Torruella,

C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

The Debtor owns and operates a business dedicated to construction projects in general and the

sale of electrical energy power plants and related accessories in particular.  Puerto Rico Electric Power

Authority ("PREPA") is a public corporation that produces, transmits, and distributes all the electric

power used in Puerto Rico.  The Debtor provides construction and repair services to PREPA and some

municipalities, among others.  On May 5, 2004, the Debtor filed a bankruptcy petition under Chapter 11

in this Court.

The Movant is a surety company, and it issued multiple payment and performance bonds

(hereinafter "surety bonds") for construction projects which had been awarded to the Debtor prior to the

commencement of the Debtor's bankruptcy proceedings.  Pursuant to the payment bond agreement

entered into between the Movant and the Debtor, the Movant and the Debtor are jointly bound unto the

project owners, including PREPA, for the payment, up to the penal sum which matches the contract price,

to all persons supplying labor, equipment, tools and materials in the prosecution of the construction work.

The Movant and the Debtor are also jointly responsible to perform and fulfill all the undertakings,

covenants, terms and conditions of the construction contract, up to the penal sum, pursuant to the

performance bond agreement.

In consideration of the execution of the surety bonds, the Movant and the Debtor executed a General Agreement of Indemnity dated February 11, 1999 (the "Agreement"), which provides for assignment of the Debtor's property rights to the Movant in the event of the Debtor's default of the bonded contract. The Movant has not recorded the Agreement with the State Department of the Commonwealth of Puerto Rico.

On May 18, 2004, the Court granted the Debtor's request for use of cash collateral until June 17, 2004. On June 18, 2004, the Debtor withdrew its request for continued use of cash collateral and expressed its intention to assume certain projects including projects bonded by the Movant, and to self finance the completion of said projects. (Ct. Doc. 88). In the motion, the Debtor stated its position that the proceeds of ongoing bonded projects are free and clear of any liens on behalf of the Movant as of the petition date. On July 9, 2004, the Debtor filed two motions to assume four projects on which the Movant issued surety bonds. (Ct. Docs. 129 and 131). PREPA owns two projects out of the four listed in the Debtor's motions.

Contrary to the Debtor's assertion that the contract receivables are free and clear of any liens, the Movant contends that it has a priority interest in the proceeds, and its interest is not adequately protected if the Debtor is free to apply contract receivables to the Debtor's expenses on other contracts. The Movant also objects to the Debtor's assumption of the four bonded projects unless its interest in the bonded contract proceeds is adequately protected. At this moment, the Debtor has not defaulted on any of the construction contracts.

### DISCUSSION

Sections 362, 363 and 364 of the Bankruptcy Code[1] allow a party in interest to request the court to determine whether its interest in property is adequately protected. The protected interests include

---

[1]Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

equitable as well as legal interests. See H.R. REP. NO. 95-598 at 338-40 (1977). The Movant has the burden of proof concerning the validity, priority, and extent of its interest in the contract fund under § 363(o)(2).

In support of its claim, the Movant alleges three alternative theories—the doctrine of equitable subordination, trust fund theory and assignment theory. First, the Movant argues that as a surety obligated to pay any unpaid contractors, laborers, or suppliers on the project, it has an equitable lien on the contract proceeds, to the extent of its losses, through subrogation to the rights of the suppliers, laborers, and contractors. With respect to the rejected construction contracts, the Debtor acknowledges that it holds no interest and that the Movant can dispose of the receivables from the contracts as it sees fit in order to cure any loss that it may have. However, with regard to the contracts in which the Debtor seeks to assume, the Debtor objects to the Movant's assertion of priority interest.

The surety's interest is typically found to be prior and superior to that of the parties claiming an interest in the contractor's receivables because the surety is subrogated to the contractor/creditor's right to the contract funds. See Pearlman v. Reliance Ins., Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). If the Debtor has defaulted on the construction contracts which it requested to assume, the Movant may claim its priority rights pursuant to the subrogation doctrine. See In re RAM Constr. Co. Inc., 32 B.R. 758 (Bankr. W.D. Pa. 1983) (holding that surety had priority in accounts receivables over secured party when the debtor was in fact in default). BBVA also acknowledges the Movant's priority rights over its right in the event of the Debtor's default. However, in the instant case, the default, an event required for the Movant's right to vest in the contract funds, has not occurred. See International Fidelity Ins. Co. v. United States, 949 F.2d 1084 (8th Cir. 1991) (holding that surety had priority as to IRS liens filed after contractor defaulted, but not as to IRS liens filed before contractor defaulted); American Fire and Casualty Co. v. First Nat'l City Bank, 411 F.2d 755, 758 (1st Cir. 1969) (surety cannot recover payments from bank, which were earned and paid out to the bank prior to default of the contractor). There is no proof presented that the Debtor has defaulted and that the Movant has disbursed any money to comply with its obligations under the surety bonds. The Movant does not assert that the Debtor is in fact in default, or that as a result of such default, it has become obligated to pay under the

- 4 -

surety bonds. The Court recognizes that under Puerto Rico law, the surety who fulfills obligations for the debtor is subrogated to all the rights which the creditor had against the debtor by virtue of its payment. See Article 1737 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 4911; Article 1738 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 4912. But, under the present circumstances, the Movant has not acquired the subrogation right. See Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc., 960 F.2d 366 (3rd Cir. 1992) (payment and performance bond surety had not acquired subrogation rights against contractor when surety had not yet paid laborers and materialmen).

The Movant next contends that the bonded contract proceeds are not property of the estate because they were held in a valid trust pursuant to the Agreement, executed by both the Debtor and the Movant. Generally, whether a trust has been established is a question to be resolved under state law. Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957). The Agreement does not contain a choice of law provision, but the Court determines that Puerto Rico law applies here since the Debtor is a citizen of Puerto Rico, the contract projects are to be performed in Puerto Rico, and the trust property is located in Puerto Rico.

Paragraph 10 of the Agreement provides that:

> All payments received for or on account of a BONDED CONTRACT shall be held as a trust in which the [Movant] has an interest, for the payment of obligations incurred in the performance of such contract and of labor, materials, and services furnished in the prosecution of the work provided in such contract or any extension or modification thereof. Further, it is expressly understood and declared that all monies due and to become due under any such contract or contracts are trust funds, whether in the possession of [Debtor] or otherwise, for payment of all such obligations in connections with any such contract or contracts for which [Movant] would be liable under any of such BONDS. It is further agreed that such trust funds inure to the [Movant] for any liability or loss it may have or sustain under any such BONDS, and this Agreement and declaration shall also constitute notice of such trust. (emphasis in original) (alterations added).

Under Puerto Rico law, if the terms of a contract are clear and leave no doubt as to the intentions of the parties, the literal sense of its provisions will be observed. Article 1233, Civil Code of Puerto Rico, 31 L.P.R.A. 3471; Luce & Co. v. Labor Relations Board, 96 P.R.R. 402 (1962). See also Fernandez-Fernandez v. Municipality of Bayamon, 942 F. Supp. 89 (D.P.R. 1996) (Article 1233 is strict in its mandate that courts should enforce the literal sense of a written contract, unless the parties' intention is

not clear from the contract's reading).  The language of the Agreement establishes expressly that a trust is to be created.  The Agreement further specifies that the trust *res* will consist of "all monies due or to become due" for any bonded contracts.  The only reasonable interpretation of the contractual relationship between the parties is that the Debtor is the trustee, and that the materialmen and the laborers, along with the Movant in the case of payments under the bonds, are the beneficiaries of the trust.  For these reasons, the Court finds that the Agreement has established a valid trust under Puerto Rico law.

However, the Court does not agree with the Movant's assertion that the bonded contract proceeds being held in trust funds are excluded from the bankruptcy estate.   Section 541 broadly defines property of the estate to include all legal and equitable interests of the debtor. 11 U.S.C. § 541(a).  Property in which the debtor holds only legal title, but not an equitable interest, also becomes part of the bankruptcy estate, but only to the extent of the debtor's legal title and not to the extent of any interest in the property that the debtor does not hold. 11 U.S.C. § 541(d).  There is no question that the Debtor as a trustee has a legal interest in the proceeds.  Thus, it follows that the contract proceeds regarded as in trust are included within the estate, but subject to the equitable lien of the subcontractors and/or the Movant.    But, the Court notes that in some portion of the proceeds the Debtor might hold a beneficial interest as well.  Part of the bonded contract proceeds might be compensation for the Debtor's overhead expenses exclusive of labor and materials.  In re Glover Const. Co., 30 B.R. 873, 881 (Bankr. W.D. Ky. 1983).  In that regard, the Debtor becomes a beneficiary of the trust funds at times.  Therefore, to the extent that the Debtor holds a beneficial interest in the proceeds, the Debtor is entitled to use the funds in the course of its efforts toward reorganization.  See In re Alliance Properties, Inc., 104 B.R. 306, 312 (S.D. Cal. 1989).

Having found that the Movant has an equitable interest in the bonded contract proceeds less the Debtor's overhead expenses, the Court will not discuss the Movant's legal interest under the General Agreement of Indemnity.  Since the Court finds that the Movant is entitled to adequate protection, the Movant's objection to the Debtor's assumption of the four projects is moot.  The Debtor's motions to assume the four construction projects are hereby granted.

<u>**CONCLUSION**</u>

For the reasons stated above, the Movant's motion for adequate protection is granted.  The Debtor shall segregate the bonded contract proceeds on a project by project basis,[2] and the funds on the particular bonded project are to be used to discharge the Debtor's obligation on that same project.  The Debtor is allowed to submit a statement of its overhead expenses.  Further, the Debtor shall provide the Movant with bi-weekly accounting of the disposition of all bonded contract proceeds.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DONE and ORDERED this 5th day of May, 2005, at Manchester, New Hampshire.

<u>/s/ Mark W. Vaughn</u>
Mark W. Vaughn
Chief Judge for U.S. Bankruptcy Court
District of New Hampshire, sitting by designation

---

[2] The Court acknowledges that the Debtor already maintains separate bank accounts for bonded projects and keeps the proceeds on a project by project basis.