# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

In re:                                                    Bk. No. 04-04781-MWV
                                                          Chapter 11
Maxon Engineering Services, Inc.,
                    Debtor

## MEMORANDUM OPINION

The Court has before it "PREPA's Rule 9023 Motion to Reconsider, Alter, Amend and for Additional Findings."  The Court agreed to reconsider its Memorandum Opinion dated September 13, 2005, wherein the Court found the Puerto Rico Electric Power Authority ("PREPA") to have violated the automatic stay.  Maxon Engineering Services, Inc. (the "Debtor") filed its opposition on September 28, 2005, and the Court held a hearing on September 29, 2005.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Resolution for Bankruptcy Cases" dated July 19, 1994 (Torruella, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## FACTS

Debtor, an engineering company, performed work prepetition on several of PREPA's projects pursuant to contracts entered into by Debtor and PREPA.  During the course of this relationship Debtor assigned its rights to payment under approximately ten of these contracts to Banco Bilbao Vizcaya Argentaria ("BBVA").  PREPA assented in writing to the assignments.  PREPA was to write the checks, payable for the Debtor's work, in the names of both the Debtor and BBVA.  Prior to the Debtor filing its bankruptcy petition, PREPA, on several occasions, violated the assignment agreements by disbursing checks payable only in the Debtor's name.  As a result, BBVA did not receive payment on

these occasions. BBVA has since filed suit against PREPA in Puerto Rico state court seeking damages of $2,015,249.86.

The Debtor filed its petition for chapter 11 bankruptcy on May 5, 2004. After that date, the Debtor continued to provide services and equipment to PREPA. The amounts owing Debtor for this post-petition work exceeds $500,000 (the "post-petition funds"). PREPA placed an administrative hold on the payment of the post-petition funds owed the Debtor while PREPA investigated BBVA's claim.

### DISCUSSION

In its Memorandum Opinion, the Court found PREPA to be in violation of the automatic stay for placing an administrative hold on the post-petition payments due the Debtor. Along the way, the Court found that PREPA was attempting to set off post-petition funds against a prepetition claim (i.e., PREPA's claim against the Debtor in response to BBVA's claim against PREPA). As the Court stated, a creditor cannot use post-petition funds to set off prepetition claims. See United States v. Holden, 258 B.R. 323, 327 (D. Vt. 2000); In re Ruiz, 146 B.R. 877 (Bankr. S.D. Fla. 1992). PREPA now advances two arguments: first, that its claim against the Debtor is a post-petition claim, rather than a prepetition claim; and, second, that its administrative hold on the post-petition funds is not a violation of the automatic stay.

PREPA argues that its claim is a post-petition claim because PREPA was unaware that it had a claim against the Debtor until BBVA asserted a claim against PREPA, which occurred after the Debtor filed bankruptcy. Essentially, PREPA argues that because it did not become aware of its potential liability to BBVA, and hence did not know it had a claim against the Debtor, until after the Debtor filed its bankruptcy petition, PREPA did not have an enforceable right to payment, and therefore it had no "claim" under the bankruptcy code. PREPA relies on In the Matter of M. Frenville Co., Inc. for the proposition that a bankruptcy claim does not arise until a right to payment, i.e., cause of action, arises under

applicable state law.  744 F.2d 332 , 337 (3rd Cir. 1984).  <u>Frenville</u>, however, represents a narrow

definition of the term "claim" that has been followed by virtually no court outside the Third Circuit.  <u>See</u>,

<u>e.g.</u>, <u>In re Hemingway Transport, Inc.</u>, 954 F.2d 1, 8 & n.9 (1st Cir. 1992); <u>Grady v. A.H. Robins Co,</u>

<u>Inc.</u>, 839 F.2d 198, 201 (4th Cir. 1988); <u>In re Jensen</u>, 995 F.2d 925, 930 (9th Cir. 1993); <u>In re Parker</u>, 313

F.3d 1267, 1269–70 (10th Cir. 2002).

The language of section 101(5)[1] itself urges a broader reading of "claim."  Section 101(5) casts a

wide net:

> (5)  "claim" means—
>      (A)  right to payment, whether or not such right is reduced to judgment,
> liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
> equitable, secured, or unsecured; or
>      (B)  right to an equitable remedy for breach of performance if such breach gives
> rise to a right to payment, whether or not such right to an equitable remedy is reduced to
> judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or
> unsecured.

This broad wording was apparently intended to ensure that "all legal obligations of the debtor, no matter

how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R. Rep. No. 95-595, at

309 (1977), <u>as reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6266; <u>accord</u> S. Rep. 95-989, at 22 (1978), <u>as</u>

<u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5808.

Courts have employed several tests to determine when a bankruptcy claim arises.  According to

the conduct test "the focus should be on the time when the acts giving rise to the alleged liability were

performed . . . .  Thus, for federal bankruptcy purposes, a prepetition 'claim' may well encompass a

cause of action that, under state law, was not cognizable until after the bankruptcy petition was filed." <u>In</u>

<u>re Johns-Manville Corp.</u>, 57 B.R. 680, 690 (Bankr. S.D.N.Y. 1986); <u>see also</u> <u>In re A.H. Robins Co., Inc.</u>,

63 B.R. 986, 993 (Bankr. E.D. Va. 1986) (holding that the claim arose when claimant inserted the Dalkon

---

[1]  Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

3

Shield, rather than upon manifestation of injury). The narrower prepetition relationship test requires "some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant." In re Piper Aircraft Corp., 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994) (employing the test in a products liability situation). Finally, the fair contemplation test, a derivation of the prepetition relationship test, requires a degree of relationship sufficient that the claimant could fairly contemplate that a claim would arise. See In re Nat'l Gypsum Co., 139 B.R. 397, 408–09 (Bankr. N.D. Tex. 1992).

This Court finds that PREPA has a prepetition claim under all three tests. All of the contracts at issue between PREPA and the Debtor were entered into prepetition. PREPA assented to all of the assignments to BBVA prepetition. All checks erroneously made payable solely to the Debtor were disbursed by PREPA prepetition. Hence, a significant and enduring relationship was established among the parties prepetition, and all of the Debtor's conduct giving rise to Debtor's alleged liability to PREPA was performed prepetition. Also, having signed approximately ten assignment agreements and disbursed numerous checks, PREPA had sufficient knowledge so as it could have fairly contemplated that the alleged liability might arise from its erroneous check disbursements. It is immaterial whether PREPA was aware of BBVA's claim against it before the Debtor filed its bankruptcy petition. The relationships had been established, and the conduct giving rise to liability had been completely performed such that PREPA could have anticipated some liability for its repeated mistaken actions. The Court thus finds that PREPA had a prepetition claim against the Debtor, and, therefore, PREPA has no right to set off this prepetition claim against post-petition funds owed the Debtor. A creditor cannot use post-petition funds to set off prepetition claims. See United States v. Holden, supra; In re Ruiz, supra.

Remaining is PREPA's contention that the Court erred in concluding that PREPA's administrative hold of funds owed the Debtor violated section 362(a)(3). Section 362(a)(3) stays "any act

4

to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." PREPA argues that its placement of an administrative hold on the post-petition funds owed the Debtor is not an act to obtain or exercise control over property of the Debtor's estate. That the accounts receivable owed the Debtor are property of the estate is not disputed. The issue is whether the administrative hold is an act stayed by section 362(a)(3). PREPA cites Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995), as "holding that an administrative hold placed on the payment of a debt owed to a creditor in bankruptcy does not violate the automatic stay." (PREPA's motion to reconsider). The Court disagrees; Strumpf is not so broad. In Strumpf, the Court held that a bank did not violate the automatic stay by placing a temporary administrative hold on the debtor's bank account while it sought relief from the automatic stay. Strumpf, 516 U.S. at 21. A central fact in Strumpf, though, was that the bank had a valid right of setoff. See id. (describing the bank's administrative hold as "the temporary refusal of a creditor to pay a debt *that is subject to setoff* against a debt owed by the bankrupt") (emphasis added). The conclusion that there must be at least a colorable claim of setoff rights in order for a temporary administrative freeze to not be violative of the automatic stay is further supported by the Court's stated question presented of "whether the creditor of a debtor in bankruptcy may, *in order to protect its setoff rights*, temporarily withhold payment of a debt that it owes to the debtor in bankruptcy without violating the automatic stay imposed by 11 U.S.C. § 362(a)." Id. at 17 (emphasis added); see also In re Holden, 217 B.R. 161, 166 (D. Vt. 1997) ("Under Strumpf, a temporary freeze on funds in which a creditor has a good faith basis for asserting a right of setoff, and which is promptly followed by a request for relief from stay, maintains the status quo and therefore may not violate the automatic stay."). In In re Harris, the court found a creditor's reliance on Strumpf to be misplaced because the creditor, like PREPA in the instant case, "placed an administrative hold upon post-petition funds rather than pre-petition funds." 260 B.R. 753, 755 (Bankr. D.

Md. 2001). Accordingly, the court held that the creditor's administrative hold violated the automatic stay because it "had no right to set off." Id. at 756. PREPA's administrative hold is further distinguishable from the temporary hold in Strumpf, where the bank sought relief from the automatic stay five days after initiating the hold. In contrast, PREPA filed its motion for relief from the automatic stay *after* this Court issued its Memorandum Opinion finding PREPA's hold to be in violation of the stay. For the reasons stated above, PREPA's administrative hold on post-petition funds owed the Debtor is a violation of section 363(a)(3).

### CONCLUSION

PREPA's motion to reconsider is denied. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final order consistent with this opinion.

DATED this 21st day of November, 2005, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Bankruptcy Judge
District of New Hampshire
Sitting by designation