# UNITED STATES BANKRUPTCY COURT
## for the
### DISTRICT OF PUERTO RICO

In re:

Maxon Engineering Services, Inc.,
            Debtor

Bk. No. 04-04781-MWV
Chapter 11

## MEMORANDUM OPINION

The Court has before it the motion to convert the case from Chapter 11 to Chapter 7 filed by

United States Fidelity & Guaranty Company ("USF&G"), to which motion United Surety & Indemnity

Company ("USIC") joined.  The Court held a hearing on that motion on May 4, 2005, and indicated it

would rule on the motion at the same time it ruled on confirmation of the Debtor's Chapter 11 plan.  The

Court also has before it the confirmation of Debtor's plan of reorganization.  Objections to confirmation

of the plan were filed by the creditors' committee, USF&G, USIC, the Treasury Department of the

Commonwealth of Puerto Rico, Lilly Del Caribe, Cosvi and Indus International.  An evidentiary hearing

on confirmation was held on May 18 and 19, 2005, and the Court heard oral arguments on June 1, 2005.

At the commencement of the May 18, 2005, hearing, it was announced that settlement had been reached

with respect to the Cosvi and Indus International objections.  At the conclusion of the oral arguments, the

Court took the plan confirmation under advisement.  Since the confirmation hearings, the Debtor has

proceeded with the claim resolution process and, as of the date of this opinion, most of the claims have

been resolved.  For the reasons set forth below, the Court denies the motion to convert and confirms the

Debtor's Chapter 11 plan of reorganization.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334

and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy

Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## DISCUSSION

The Court will first deal with the counting of the ballots in Classes 9 and 10 of Debtor's plan of reorganization. At the conclusion of the hearing on May 19, 2005, counsel for Lilly Del Caribe raised the issue that creditors in Class 10 (general unsecured) who elected to be treated in Class 9 (convenience class) were still being counted in Class 10. The Court agrees with Lilly. Those creditors in Class 10 who elected to be treated in Class 9 should be counted in Class 9. Subsequent to the hearing, the Debtor filed a revised ballot count showing this change. Making this change does not modify the fact that the Debtor has the acceptances of Classes 4, 5, and 9. Since Class 11 clearly voted to reject the plan, in order to have the plan confirmed, the Debtor must satisfy the requirements of 11 U.S.C. § 1129(b).

The Court will now deal with objections to the plan of reorganization. Since many of the objections refer only to the provisions of section 1129, and since multiple creditors have raised the same objections, the Court, in most cases, will deal with the objections by category as opposed to those raised by individual creditors.

Section 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." Creditors argue that the Debtor's plan does not meet this requirement. In support of this argument they assert, based on the examiner's report, for the year 2002 the Debtor had two financial reports prepared, one ending July 31, 2002, and the other ending October 31, 2002, which reports contain material differences. The fact that two sets of financial statements were prepared is not disputed. They further assert that assets of the Debtor in Puerto Rico were diverted to the Dominican Republic to the detriment of the Debtor. Finally, they assert that there is an unexplainable decrease in the value of those assets now held in the Dominican Republic. While these allegations are significant, the Court finds that they do not support a finding that the plan was filed in bad faith by current management.

These events occurred prior to the filing of the Chapter 11 case, which was filed on May 5, 2004. While the current president of the Debtor, Ms. Mieses, was an officer when these events occurred, there is no evidence that she had any control over these activities. Indeed the examiner found that the financial statements were prepared at the direction of then-president and chief shareholder, Mr. Juan Mieses.

The Court agrees that significant assets were transferred from Puerto Rico to the Dominican Republic. However, there is insufficient evidence that these transfers were for other than a valid business purpose of the Debtor. The purpose of the transfers was to build and operate electrical generation plants in the Dominican Republic. For whatever reason these investments did not provide returns anticipated, and they are no longer in operation. The Debtor has received payments as a result of these projects, and there are currently owed to the Debtor amounts in excess of $9,000,000, although the Debtor estimates that only $5,000,000 will be realized. (See Schedule 5 to Exhibit 9.)

Finally, the Court finds that the difference in the value of the investments is the result of the fact that they are currently valued not on the basis of an operational electrical generation plant, but as bricks and mortar. For the reasons set out above, the Court finds that the plan is filed in good faith and not by any reason forbidden by law.

An objection to the plan under section 1129(a)(7) is raised that the plan is not in the best interests of creditors. Specifically, the bonding companies state that they may receive less on account of their Class 11 claims than general unsecured creditors and over a different period of time. While the plan could be read to treat the bonding companies differently, at trial it was asserted by the Debtor that this was not its intent and that bonding companies would receive the same amount as the general unsecured creditors. As to the timing, there is the possibility that it will take longer to determine the amount of the claims on the bonded jobs than that of other unsecured creditors.[1]

---

[1] This appears to be resolved if the settlement agreement with USF&G is approved.

A second argument is made that the plan is not in the best interests of creditors since exclusivity was not terminated and there was not a formal reorganization value determined for the Debtor. The Court discounts these arguments. While it is true that exclusivity was not terminated but twice extended with only USF&G objecting to the second extension, this Debtor was in Chapter 11 a year prior to the confirmation hearing. During that period, no party in interest moved to terminate exclusivity, and there was no indication of a competing plan. Indeed, the creditors' committee was largely composed of parties that actually competed with the Debtor.[2] Finally as to value, the Debtor did provide a liquidation analysis to which there was no significant dispute. The Court further agrees with the Debtor that the value of the Debtor is in its current management and its desire to turn the company around. The Court finds that the plan is in the best interest of creditors.

A similar argument is made that the plan unfairly discriminates under section 1129(b)(1) because Class 11 is treated differently than Class 10. For the same reasons cited above, the Court finds that plan does not unfairly discriminate.

Section 1129(a)(11) requires a finding that confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This is commonly referred to as the feasibility test. There is disputed evidence as to whether the Debtor has been profitable during the course of the Chapter 11. Objectors assert that, absent payment from the Dominican Republic, the Debtor has continually shown operating losses. The Debtor argues that the objectors are using a cash basis accounting rather than an accrual basis to obtain their results. In any case, it cannot be disputed that during the course of the reorganization, the Debtor has survived and paid its bills, including significant reorganization expenses.

At trial, the issue was raised as to who actually owned the CNG Developers stock and its value. The plan calls for its sale, estimated to be at $250,000. Ms. Mieses testified at trial that an offer for

---

[2] The Court agrees with the Debtor that it is questionable whether the creditors' committee reflected the view of its constituency since a majority of creditors in number voted to accept the plan.

- 4 -

$219,000 had been received. She further testified that these funds were to pay administrative expenses and, if the $250,000 was not realized, there would be sufficient funds on hand to make up the difference. The Court finds that the failure to obtain $250,000 would not jeopardize the feasibility of the plan.

Finally, as to feasibility, the objectors argue that since the payment to Class 10 creditors is to be made from funds collected from the Dominican Republic, the plan is speculative and not feasible. They argue that there have been no recent payments from the Dominican Republic and that a change in the government of the Dominican Republic casts doubt on their collectibility.

While the realization of these accounts cannot be guaranteed, the Court makes the following findings in support of confirmation. First, the Debtor has received payments in the past. Second, the Debtor, in support of the feasibility of its plan, has discounted the value of these assets from $9,385,743 to $5,389,974.90. (See Exhibit 9, Schedule 5 of Debtor's Disclosure Statement.) Finally, the plan does not guarantee the receipt of these proceeds, as Class 10 is proposed to receive up to twenty percent of their allowed claims. The Court further agrees with the Debtor that it will be in a better position to collect these receivables than a trustee because of its familiarity with the projects in the Dominican Republic. The Court finds that the plan is feasible.

Citing In re Global Ocean Carriers Ltd., 251 B.R. 31 (Bankr. D. Del. 2000), Lilly Del Caribe argues that Debtor has not met its burden to show that sufficient new value is going to the reorganized Debtor. The plan provides that the shares of the current shareholder, Mr. Juan Mieses, are being terminated and that he neither gets nor retains anything of value under the plan. Unlike the Global case, there is no evidence that the former shareholder has dictated that Ms. Mieses will become his successor.[3] In fact, the evidence supports the finding that the terms of the plan as proposed were determined by current management without the direction of Mr. Mieses. In Global, there was no evidence that the successor stockholder had any financial experience or business acumen. It is evident in the instant case

_____

[3] In fact, Ms. Mieses testified at trial that she was prepared to bring suit against her father, Mr. Juan Mieses, if required.

that by her résumé and record in running the Debtor, that Ms. Mieses has both experience and business acumen. This is not a new value plan. It should be noted that the <u>Global</u> case concerned a prepackaged plan in which confirmation commenced less than four months after the plan was filed as opposed to fifteen months in the instant case.

Two other issues must be addressed. The Treasury objected to the plan on the grounds that confirmation was premature since it was presently conducting an audit which could affect the feasibility of the plan. At the time of the hearing on confirmation, the Treasury had filed proof of claim, which had not been amended. That Debtor's plan provides in Article IV for the payment of that claim as allowed by 1129(a)(9)(c) of the Bankruptcy Code. The Court finds that treatment sufficient for confirmation of the plan currently before the Court. The Court notes that subsequent to the confirmation hearing, the Treasury filed an amended proof of claim to which the Debtor objected and which is currently before the Court.

Finally, the motion to convert the case argues that the case shall be converted because of the Debtor's inability to effectuate a plan, stating that the Debtor cannot meet the requirements of section 1129 to confirm a plan and that there has been an unreasonable delay. By confirming the plan, the Court has negated the first argument. As to the unreasonable delay, the Court disagrees. The case was filed in May 2004, the plan was filed in January 2005, and the confirmation hearing held in May and June 2005. As the Court previously indicated, this is a complicated construction case, and these types of cases do not lend themselves to easy reorganization under Chapter 11, especially when bonding companies are involved. Under the circumstances of the case, the Court finds that there has not been any unreasonable delay.

**CONCLUSION**

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 25th day of January, 2006, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn, Chief Judge
U.S. Bankruptcy Court, District of New Hampshire
Sitting by designation