UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

PUERTO RICO ELECTRIC POWER
AUTHORITY,

       Appellant,

       v.

MAXON ENGINEERING SERVICES,
INC., et al.

       Appellees.

Civil No. 06-1538 (JAF),
(Consolidated with Civil No. 06-1597 (JAF), and Civil No. 06-1598 (JAF))

(Bankr. No. 04-4781 (SEK))

## OPINION AND ORDER

Before the court are three consolidated bankruptcy appeals brought by the Puerto Rico Electric Power Authority ("PREPA"). Docket Document Nos. 4, 31, 36.[1] The first appeal challenges the bankruptcy court's initial decision finding that PREPA violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (2007). Docket Document No. 4; (Case No. 06-1538, Apps. 2, 6).[2] PREPA's second appeal challenges the bankruptcy court's denial of its motion for relief from the automatic stay. Docket Document No. 31; (Case No. 06-1597, App. 2). PREPA's third appeal challenges the bankruptcy court's denial of its motion to dismiss, which was filed

---

[1] All citations to the docket refer to Case No. 06-1538, the lead case in these consolidated appeals.

[2] Citations in the form "Case No. ___, App. [or Ex.] __" refer to documents contained in the record on appeal for each of the three cases in the consolidated appeals.

Civil No. 06-1538 (JAF)                                    -2-

in a related adversary proceeding. Docket Document No. 36; (Case No. 06-1598, Ex. 2). These three cases were consolidated because they involve common questions of law or fact, as well as the same parties. Docket Document Nos. 9, 11. For the reasons stated below, we affirm the bankruptcy court's findings in all three appeals, with the exception of the issue of qualified immunity in PREPA's third appeal, Docket Document No. 36, which we remand to the bankruptcy court.

## I.

### Factual and Procedural Synopsis

Unless indicated otherwise, we derive the following factual and procedural background from the parties' filings and the record on appeal. Docket Document Nos. 4, 12, 13, 18, 23, 29, 31, 35, 36.

Before Debtor Maxon Engineering Services, Inc. ("Maxon") filed its bankruptcy petition ("pre-petition period"), it had performed work on several of PREPA's projects. During the course of this business relationship, Maxon assigned its right to payment to Banco Bilbao Vizcaya Argentaria ("BBVA"). PREPA agreed to the assignment in writing such that PREPA was supposed to make all checks payable to both Maxon and BBVA, rather than to Maxon alone. However, PREPA failed to abide by this protocol on several occasions and, instead, issued checks payable only to Maxon ("PREPA's pre-petition mistake"). Maxon received and cashed these checks without forwarding the money to BBVA.

Civil No. 06-1538 (JAF)                                    -3-

After Maxon filed its bankruptcy petition on May 5, 2004 ("post-petition period"), PREPA continued to use Maxon's services. From February 10, 2005, through August 4, 2005, Maxon submitted nineteen invoices to PREPA for the services and equipment that it had provided to PREPA. During that time period - on March 15, 2005 - BBVA demanded over $2 Million from PREPA to recover the funds that it had not received because of PREPA's pre-petition mistake. Following BBVA's demand, PREPA instituted an administrative hold on the payment of the funds that it owed to Maxon for its post-petition work ("post-petition funds"), asserting that it was necessary to withhold the funds until it was able to determine whether it had a claim and/or possible setoff rights against Maxon. Specifically, PREPA wanted to determine if it had the right to setoff the post-petition funds that it owed to Maxon against the money that it owed to BBVA, since that money had been inadvertently sent to and deposited by Maxon. PREPA informed Maxon's counsel of the administrative hold on August 23, 2005.

On August 24, 2005, Maxon filed a motion requesting a turnover of $573,091.98 in post-petition money that had been withheld by PREPA ("Turnover Motion"), and alleging that PREPA's administrative hold violated the automatic stay under 11 U.S.C. § 362 (2007). The automatic stay is triggered as soon as a debtor files a bankruptcy petition. <u>Masterson v. Berkeley Fed. Bank & Trust, FSB (In re Masterson)</u>, 189 B.R. 250, 251 (Bankr. R.I. 1995)(citing 11 U.S.C.

Civil No. 06-1538 (JAF)                                                    -4-

§ 362).   It is "designed to freeze the status quo at the outset of bankruptcy proceedings, by precluding and nullifying most post-petition judicial and extrajudicial actions and proceedings against the Debtor or affecting property in which the Debtor or the Debtor's estate has a legal, equitable or possessory interest." Id. (internal quotations omitted).   Pursuant to the automatic stay, a creditor is barred from using post-petition funds to setoff pre-petition claims that it has against the debtor.   § 362(a)(7); see also In re Holden, 258 B.R. 323, 327 (D. Vt. 2000); In re Ruiz, 146 B.R. 877, 879 (Bankr. S.D. Fla. 1992).

On September 13, 2005, the court found that it could not decide Maxon's turnover request on a motion because such matters can only be decided in an adversary proceeding, which Maxon subsequently initiated.   However, the court agreed with Maxon that PREPA had violated the automatic stay because its administrative hold was an impermissible attempt to setoff post-petition funds against pre-petition claims.   PREPA moved for reconsideration but its motion was denied.   Now, in its first appeal, PREPA urges us to reverse the findings of the bankruptcy court, asserting that it did not violate the automatic stay and, therefore, the bankruptcy court's findings are wrong as matter of law.

PREPA's second appeal challenges the bankruptcy court's November 21, 2005 Memorandum Opinion, denying its motion for relief from the automatic stay.   Finally, PREPA's third appeal challenges

Civil No. 06-1538 (JAF)                                           -5-

the bankruptcy court's denial of its motion to dismiss Maxon's adversary proceeding against PREPA. Maxon had filed this proceeding on September 8, 2005, seeking, inter alia, damages for PREPA's violation of the automatic stay.

On July 14, 2006, PREPA moved to consolidate the three appeals, asserting that all three appeals involve common questions of law or fact and involve the same parties. Docket Document No. 9. We granted PREPA's motion on July 27, 2006. Docket Document No. 11. Trustee-Appellee opposed all three of PREPA's appeals. Docket Document Nos. 13, 23, 29, 35. PREPA replied to each of Trustee-Appellee's opposition briefs. Docket Document No. 18, 31, 36.

## II.

## Standard

In reviewing the bankruptcy court's decision, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness." FED. R. BANKR. P. 8013 (2007). However, we consider the bankruptcy court's conclusions of law de novo. Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997).

## III.

## Analysis

A.    **PREPA's First Appeal, Case No. 06-1538**

Civil No. 06-1538 (JAF)                                                    -6-

On September 13, 2005, the bankruptcy court denied Maxon's Turnover Motion, finding that a request for outstanding payments cannot be brought as a motion; rather, such a request must be filed as a separate adversary action. (Case No. 06-1538, App. 6); FED. R. BANKR. P. 7001 (2007) (stating that an action "to recover money or property" must be decided in an adversary proceeding). Notwithstanding the court's denial of Maxon's Turnover Motion, it found that PREPA's administrative hold violated the automatic stay because it had no right to setoff post-petition funds against pre-petition claims. (Case No. 06-1538, App. 6.) PREPA filed a motion for reconsideration, but the court denied it on November 21, 2005. (Case No. 06-1538, App. 2.) PREPA asserts that the court erred because, as with Maxon's turnover request, Maxon's request that the court enforce the automatic stay and, concomitantly, determine whether PREPA has setoff rights can only be made in an adversary proceeding, not by motion. Alternatively, PREPA argues that, even if the court could make such determinations on a motion, it erred by failing to hold an evidentiary hearing to fully flesh out the issues; and it incorrectly concluded that PREPA had no right to setoff and that its administrative hold violated the automatic stay.

1.    **Whether PREPA's Due Process Rights Were Violated**

PREPA alleges that the bankruptcy court violated its due process rights by determining that PREPA violated the automatic stay and had no setoff rights on a motion rather than in an adversary proceeding.

Civil No. 06-1538 (JAF)                                                    -7-

Docket Document Nos. 4, 18. According to PREPA, the Bankruptcy Code requires all determinations regarding a party's "interest in property," which includes setoff rights, to be decided in an adversary proceeding. Docket Document No. 18 (citing FED. R. BANKR. P. 7001). By deciding whether PREPA violated the automatic stay and/or had setoff rights on a motion, the bankruptcy court denied PREPA the opportunity to have an evidentiary hearing and other due process protections that accompany an adversary proceeding. Id.

"The automatic stay is among the most basic of debtor protections under bankruptcy law. It is intended to give the debtor breathing room by stopping all collection efforts, all harassment and all foreclosure actions." Rijos v. Vizcaya (In re Rijos), 263 B.R. 382, 389 (1st Cir. 2001) (internal quotations omitted). Pursuant to the automatic stay, a creditor such as PREPA is prohibited from using post-petition funds to setoff pre-petition claims that it has against the debtor. 11 U.S.C. § 362(a)(7).

Although we have not found a case that contains the exact facts that we are faced with today – where a debtor moved to enforce the automatic stay outside of an adversary proceeding, alleging that the creditor had attempted an impermissible setoff - we find that the bankruptcy court had the authority to enforce the automatic stay on

Civil No. 06-1538 (JAF)                                    -8-

the debtor's motion and did not need to wait until the matter is presented in an adversary proceeding to do so.[3]

First, we note that, in cases in which debtors have moved to enforce the automatic stay for reasons other than a creditor's attempted impermissible setoff, courts found that they had the authority to decide a motion alleging a violation of the automatic stay. See, e.g., In re Dunning, 269 B.R. 357, 367 (Bankr. N.D. Ohio 2001)(stating that neither the Bankruptcy Code nor the Rules require an adversary proceeding for a violation of the automatic stay and, thus, the court could decide the matter on the debtor's motion); In re LTV Steel Co., 264 B.R. 455, 462-63 (Bankr. N.D. Ohio 2001) (finding that the thrust of debtors' motion was to enforce the automatic stay and, therefore, it was appropriate to bring the issue before the court by motion).

Next, we are further convinced that our decision is correct by the fact that courts are permitted to determine a creditor's petition for relief from the automatic stay on a motion, even when a determination of the creditor's setoff rights is necessary to decide the motion. See In re Ruiz, 146 B.R. 877, 878-79 (Bankr. S.D. Fla.

---

[3] We note that it may not always be appropriate to decide issues such as setoff rights on a motion. In more complex cases, it may be necessary to decide such issues in an adversary proceeding. See Biggs v. Stovin (In re Luz Int'l), 219 B.R. 837, 843 (9th Cir. 1983) ("While an adversary proceeding is not required for every motion for relief from stay, in this particular case the setoff motion required adjudication of complex financial arrangements and underwriting agreements.").

Civil No. 06-1538 (JAF)                                                    -9-

1992)(determining, upon creditor's motion for relief from the automatic stay, that creditor had "no right of setoff"); FED. R. BANKR. P. 4001 (2007)(authorizing creditors to move for relief from the automatic stay). If a court is permitted to decide whether a creditor has setoff rights upon a motion for relief from the automatic stay, we fail to see why we would not be able to decide the same issue on debtor's motion to enforce the automatic stay.

PREPA disagrees with this conclusion but has failed to cite to any cases in support of its contention that setoff rights and alleged violations of the automatic stay cannot be decided on a debtor's motion.

### 2. Whether An Evidentiary Hearing Should Have Been Held

In the alternative, PREPA asserts that, even if the bankruptcy acted within its authority in finding that PREPA violated the automatic stay on a motion, it should have, at the very least, held an evidentiary hearing before making its final decision. Docket Document No. 4. We disagree with this argument as well. Bankruptcy Rule 9014, which governs motions brought in bankruptcy proceedings, states that, where relief is requested by motion, "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." See FED. R. BANKR. P. 9014 (2007). However, an "opportunity for hearing" does not mean that an actual hearing is required for each motion. See Flynn v. Eley (In re Colorado Mt. Cellars), 226 B.R. 244, 246 (D. Colo. 1998); cf. Prebor v. Collins

Civil No. 06-1538 (JAF)                                        -10-

(In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998)(stating that, although the Bankruptcy Code required "'notice to the parties in interest and . . . a hearing'" before a fee award could be made, it did not mean that an actual "hearing – much less an evidentiary hearing – is . . . required in every instance" (citing 11 U.S.C. § 330(a)(1)(A))). An evidentiary hearing is particularly unnecessary "where a judge is familiar with the facts in dispute," and the parties have not requested a hearing. Flynn, 226 B.R. at 246-47.

During the course of the proceedings before the bankruptcy court, PREPA challenged the court's authority to enforce the automatic stay and determine PREPA's setoff rights outside of an adversary proceeding but it did not, in the alternative, request that the court hold an evidentiary hearing on Maxon's motion. (See Case No. 06-1538, Apps. 5, 7, 9, 10.) Secondly, the transcript shows that the judge was familiar with the facts at issue and requested additional documentary evidence, including a copy of the assignment agreement, to more fully review the facts of the case. (See id., App. 3 (Tr., Sept. 29, 2005) (documenting extensive oral argument before judge.))

Lastly, the material facts that the bankruptcy court relied on in making its determination are undisputed. PREPA has admitted that: (1) the contracts entered into between PREPA and Maxon were pre-petition; (2) Maxon executed the assignment of its PREPA payments to BBVA pre-petition; (3) PREPA agreed to the assignment pre-petition;

Civil No. 06-1538 (JAF)                                          -11-

(4) PREPA issued pre-petition checks that were made out only to Maxon and not to both Maxon and BBVA, as required by the assignment agreement; (5) Maxon continued to work for PREPA post-petition; (6) BBVA demanded all outstanding payments from PREPA post-petition; and (7) PREPA placed an administrative hold on post-petition payments that it owed to Maxon, and, therefore, has not paid Maxon for its post-petition work. (See id., Apps. 2, 6); Docket Document No. 4.

Based on all of the aforementioned reasons, we find that the bankruptcy court was not required to hold an evidentiary hearing.

### 3.    **Whether PREPA Had A Right To Setoff**

The bankruptcy court found that PREPA did not have a colorable right to setoff because it was attempting to use post-petition funds to setoff pre-petition claims, which is prohibited by the automatic stay. (Case No. 06-1538, App. 2, 6); 11 U.S.C. § 362(a)(7). To reach this decision, the bankruptcy court needed to make two determinations: (1) that the funds that PREPA was withholding from Maxon were for services and equipment that Maxon had provided to PREPA post-petition, and (2) that PREPA's claim against Maxon arose pre-petition. The first inquiry was simple because, based on the parties' briefs that were submitted to the bankruptcy court, it was undisputed that PREPA's administrative hold applied to post-petition funds. (Case No. 06-1538, App. 6.)

With regard to the second inquiry, the bankruptcy court's analysis was more extensive. The court first noted that section

Civil No. 06-1538 (JAF)                                    -12-

101(5) of the Bankruptcy Code states that a "claim" includes a "right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(2007). This expansive approach to determining when a claim arises "puts all creditors on equal footing, and allows the debtor a fresh start by resolving, in one forum, all claims based on pre-petition conduct." L.F. Rothschild & Co. v. Angier, 84 B.R. 274, 277 (D. Mass. 1988); see also In re Hemingway Transp., 954 F.2d 1, 8 (1st Cir. 1992)(stating that Congress deliberately adopted an expansive definition of a claim to "permit the broadest possible relief in the bankruptcy court" (internal quotations omitted)). The definition of a claim turns on the existence of a "right to payment," but this term is not defined within the statute. Therefore, as the bankruptcy court explained, courts usually apply one of three different tests to determine whether a claim arises pre-petition. (Case No. 06-1538, App. 2.) In this particular case, the court applied all three and found that PREPA's claim arose pre-petition under each test. (Id.)

The three tests include (1) the conduct test, (2) the pre-petition relationship test, and (3) the fair contemplation test. (Id., App. 2.); see also Roberds, Inc. v. Lumbermen's Mut. Cas. Co. (In re Roberds, Inc.), 285 B.R. 651, 657 (Bankr. S.D. Ohio)(applying the same three tests). The conduct test focuses on "the time when

Civil No. 06-1538 (JAF)                                              -13-

the acts giving rise to the alleged liability were performed." In re Johns-Manville Corp., 57 B.R. 680, 690 (Bankr. S.D.N.Y. 1986). Thus, within the context of a federal bankruptcy case, a court may find that a claim arose pre-petition even if, under state law, it would not have been cognizable until after the bankruptcy petition was filed. Id. Under the pre-petition relationship test, a court will need to determine whether some pre-petition relationship existed, such as "privity, contact, impact or hidden harm." In re Piper Aircraft Corp., 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994). The fair contemplation test looks to see whether the relationship that existed between the creditor and the debtor pre-petition was such that the creditor could fairly contemplate that a claim would arise. See In re Nat'l Gypsum Co., 139 B.R. 397, 407-9 (Bankr. N.D. Tex. 1992).

Upon a close review of the bankruptcy court's analysis, (Case No. 06-1538, App. 2), we find that it correctly applied each of the three tests to find that PREPA's claim arose pre-petition. It is uncontested that the contracts at issue between PREPA and Maxon and the assignments were agreed to pre-petition. Moreover, the checks that PREPA incorrectly issued to Maxon's name alone were disbursed pre-petition as well. (See Case No. 06-1538, Apps. 5, 6.) Thus, the conduct test is satisfied because all of the acts that gave rise to PREPA's claim against Maxon arose pre-petition. See Roberds, Inc., 285 B.R. at 657 (finding that the conduct test was satisfied because "almost all of the conduct relating to the claim . . . [occurred]

Civil No. 06-1538 (JAF)                                        -14-

pre-petition" and, therefore, creditor had no setoff rights). Moreover, during the pre-petition period Maxon established a relationship with PREPA that would have allowed PREPA to fairly contemplate the possibility of future liability, which satisfies both the pre-petition relationship test and the fair contemplation test. Id. (finding that the claim arose pre-petition under the pre-petition relationship and fair contemplation tests). Thus, the bankruptcy court correctly found that PREPA's claim arose pre-petition under all three tests.

PREPA asserts that the bankruptcy court misapplied the three tests for when a claim arose. Docket Document No. 4. Without providing legal support, PREPA argues that the court should have limited its analysis to "whether the claimant had pre-petition knowledge and awareness of his claim or whether the creditor knew or should have known about his claim." Id. PREPA alleges that it did not know nor should it have known that it had a claim against Maxon pre-petition. Id. According to PREPA, Maxon and BBVA never informed PREPA during the pre-petition period that it had been issuing the checks incorrectly or that BBVA had not received all of its payments from PREPA. Id. Therefore, it was not until the post-petition period when BBVA demanded payment from PREPA that PREPA became aware of the fact that it had a claim against Maxon for monies that PREPA owed to BBVA. Id.

Civil No. 06-1538 (JAF)                                              -15-

We find PREPA's arguments to be unpersuasive.  PREPA was the one that issued the checks incorrectly. According to the assignment contracts, which PREPA assented to, PREPA should have made all of the checks payable to both Maxon and BBVA, yet it was negligent in disbursing these checks and, on a number of occasions, made the checks payable to only Maxon.  The disbursement of these checks were in PREPA's control, and all of these acts took place pre-petition. Therefore, as the bankruptcy court stated, even if PREPA was unaware of its claim against Maxon pre-petition, it certainly should have anticipated some liability for its repeated mistaken actions.  (Case No. 06-1538, App. 2.)

PREPA further asserts that the court should have applied Puerto Rico law under which a claim arises pre-petition only if the creditor was aware of the injury pre-petition and was, therefore, able to assert a claim against the debtor at that time. Docket Document No. 4.  However, PREPA has not cited to any case law stating that a bankruptcy court is required to apply state law to determine whether a claim arises pre-petition.  By contrast, our survey of relevant case law points to the opposite conclusion, that state law is not controlling in determining when a claim arises. See, e.g., In re Hemingway Transp., 954 F.2d at 8 n.9 (refusing to accept the minority approach to determining when a claim arises, which requires courts to look to non-bankruptcy state law, because it fails to "accord full breadth to the term 'claim'" which Congress intended to be defined

Civil No. 06-1538 (JAF)                                          -16-

broadly); L.F. Rothschild & Co. v. Angier, 84 B.R. at 276 ("Relying on Congress' expansive definition of 'claim,' courts have applied . . . automatic stays to post-petition claims arising out of the debtor's pre-petition conduct, even when the debtor's cause of action was not mature under state law until after the bankruptcy filing." (listing cases from numerous jurisdictions that applied similar analysis)).

Accordingly, we agree with the bankruptcy court's finding that PREPA's claim against Maxon arose pre-petition and that PREPA was attempting an impermissible setoff because it was trying to setoff post-petition funds against a pre-petition claim. As such, we affirm the bankruptcy court's finding that PREPA had no setoff rights.

4.    **Whether PREPA's Administrative Hold Violated The Automatic Stay**

PREPA asserts, in the alternative, that even if its claim against Maxon arose pre-petition, PREPA's administrative hold did not violate the automatic stay because (1) a temporary hold is permitted under Citizens Bank of Md. v. Strumpf, 516 U.S. 16 (1995), since it is not a fully executed setoff; and (2) the automatic stay can only be violated if the frozen post-petition monies were property of the debtor's estate, which they were not.

(a)    **Whether Strumpf Applies To PREPA's Administrative Hold**

PREPA asserts that if the bankruptcy court had correctly applied Strumpf, it would have found that PREPA's administrative hold did not

Civil No. 06-1538 (JAF)                                                -17-

violate the automatic stay because it was temporary in nature and a setoff was never fully executed. Docket Document No. 4. According to PREPA, it never fully executed the three steps necessary to effectuate a setoff, which are: "'(i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff.'" Id. (quoting Strumpf, 516 U.S. at 19). We disagree and find that the bankruptcy court correctly concluded that Strumpf does not apply. (See Case No. 06-1538, App. 2, 6.)

The Strumpf Court determined that a creditor may, in order to protect its setoff rights, temporarily withhold payment of a debt that it owes to the debtor in bankruptcy without violating the automatic stay. Strumpf, 516 U.S. at 17, 19-20. The creditor in Strumpf instituted a temporary administrative hold as means to protect its setoff rights while it sought relief from the automatic stay. Id. at 19. Notably, the creditor in Strumpf filed a motion for relief from the automatic stay within five days after initiating the hold. Id. at 18. Strumpf does not apply to the case at hand because, unlike the creditor in Strumpf, (1) PREPA waited to file such a motion for relief from the automatic stay until after the bankruptcy court found that PREPA's administrative hold violated the automatic stay; and (2) PREPA had no colorable right to a setoff and, therefore, nothing to protect with its administrative hold. Therefore, the bankruptcy court did not err in finding that PREPA's administrative hold violated the automatic stay.

Civil No. 06-1538 (JAF)                                                    -18-

**(b)  Whether The Frozen Post-Petition Funds Were Property
Of The Debtor's Estate**

The bankruptcy court found that PREPA's administrative hold, which froze post-petition funds owed to Maxon, violated the automatic stay which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A debtor's estate is "created by the filing of a petition and comprises property of the debtor 'wherever located and by whomever held,' including (among other things) 'all legal or equitable interests of the debtor in property as of the commencement of the case." United States v. Inslaw, Inc., 932 F.2d 1467, 1471 (D.C. Cir. 1991)(quoting 11 U.S.C. § 541(a)(1)).

PREPA first argues that the bankruptcy court should have applied Strumpf to find that the post-petition funds that were subject to PREPA's administrative hold were not property of the debtor's estate. Docket Document No. 4. It asserts that "funds owed to a debtor in bankruptcy [merely] . . . constitute a promise by the owing creditor to pay the debt" and, therefore, are not property of the debtor's estate. Id. Because we have already distinguished Strumpf from this case and found that it does not apply, see supra section A(4)(i), we will move on to PREPA's next two arguments.

PREPA next alleges that assets whose title are in dispute are not property of the estate. Docket Document No. 4 (citing Inslaw,

Civil No. 06-1538 (JAF)                                           -19-

Inc., 932 F.2d at 1467, 1472 (D.C. Cir. 1991)). This argument fails as well because the money owed to Maxon is not in dispute. Maxon provided services and equipment in accordance with its contract with PREPA, and PREPA never contested the fact Maxon is entitled to payment for its work. Therefore, we find that PREPA does not qualify for this exception to the automatic stay.

Finally, and with little explanation, PREPA also asserts that the funds at issue are public funds and are, therefore, not considered part of the estate until they are actually paid to the person to whom the monies are owed. Docket Document No. 4. PREPA cites to City of Springfield v. Ostrander (In re LAN Tamers, Inc.), 329 F.3d 204, 212 (1st Cir. 2003), in support of its contention, which is a case that analyzes § 541(d) of the Bankruptcy Code. 11 U.S.C. § 541(d)(2007). The court found that § 541(d) "excludes property from the estate where the bankrupt entity is only a delivery vehicle and lacks any equitable interest in the property it delivers." 329 F.3d at 210. However, PREPA has failed to articulate, and we do not understand, how § 541(d) is applicable to the case before us. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Accordingly, we find that the bankruptcy court did not err in finding that the post-petition monies that PREPA froze were property of

Civil No. 06-1538 (JAF)                                                    -20-

Maxon's estate.  Thus, the bankruptcy court did not err in finding that PREPA's administrative hold violated the automatic stay.

**B.    PREPA's Second Appeal, Case No. 06-1597**

On September 16, 2005, PREPA moved for relief from the automatic stay, asserting that it had a colorable right to setoff the post-petition funds that it owed to Maxon against its claim against Maxon because creditors were permitted to setoff post-petition funds against post-petition claims.  (Case No. 06-1597, App. 6.)  Section 362(d)(1) of the bankruptcy Code provides relief from the stay "for cause."  11 U.S.C. § 362(d)(1).  On November 21, 2005, the bankruptcy court issued a Memorandum Opinion denying PREPA's motion.  (Case No. 06-1597, App. 2.)  The court based its decision on an earlier opinion in which it had found that PREPA had no setoff rights because PREPA's claim against Maxon arose pre-petition, and a creditor cannot use post-petition funds to setoff pre-petition claims.  (Id. (citing Case No. 06-1538, Apps. 2, 6.))

On appeal, PREPA asserts that the bankruptcy court erred, as a matter of law, by (1) finding that PREPA's administrative hold violated the automatic stay; (2) determining that PREPA had no setoff rights by motion rather than in an adversary proceeding; (3) finding that PREPA's claim against Maxon arose pre-petition; and (4) determining that PREPA's administrative hold constituted a setoff.  Docket Document No. 31.

Civil No. 06-1538 (JAF)                                          -21-

We will not address these arguments because they were fully discussed in the previous section, see supra section A(1)-(4), and PREPA has not presented any new arguments that would change any of our analysis.

**C.   PREPA's Third Appeal, Case No. 06-1598**

On September 8, 2005, Maxon filed an adversary proceeding against PREPA, demanding, inter alia, damages for PREPA's violation of the automatic stay pursuant to federal law, 11 U.S.C. § 105 (2007); and damages against PREPA's Executive Director, Edwin Rivera Serrano, for authorizing the administrative hold, pursuant to Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (2004). (Case No. 06-1598, Ex. 10.) On September 23, 2005, PREPA moved to dismiss Maxon's complaint, alleging, inter alia, that no damages could be awarded because PREPA's administrative hold did not violate the automatic stay. (Case No. 06-1598, Ex. 7.) On November 21, 2005, the bankruptcy court denied PREPA's motion to dismiss, relying on its previous finding that PREPA's administrative hold violated the automatic stay. (Case No. 06-1598, Ex. 2 (citing Case No. 06-1538, Apps. 2, 6.))

PREPA appeals, arguing that the bankruptcy court erred in (1) failing to treat PREPA's motion to dismiss as a summary judgment after it considered evidence outside the pleadings; (2) finding that Rivera, PREPA's Executive Director, was not protected under the doctrine of qualified immunity; and (3) relying on its previous

Civil No. 06-1538 (JAF)                                          -22-

finding that PREPA's administrative hold violated the automatic stay because (a) the court should not have made such a finding outside of an adversary proceeding, (b) pursuant to the Supreme Court's decision in Citizens Bank of Md. v. Strumpf, 516 U.S. 16 (1995), administrative holds of the PREPA variety are not violative of the automatic stay, and (c) PREPA's claim against Maxon arose post-petition and a creditor may setoff post-petition funds against post-petition claims. Docket Document No. 36. We will limit our discussion to PREPA's first two arguments because we previously rejected all of PREPA's remaining arguments that relate to its violation of the automatic stay. See supra section A(1)-(4).

1.  **Whether The Bankruptcy Court Erred By Not Converting PREPA's Motion to Dismiss To A Motion For Summary Judgment**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states in pertinent part that, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." FED. R. CIV. P. 12(b)(6). PREPA asserts that the bankruptcy court should have converted PREPA's Rule 12(b)(6) motion to dismiss to a motion for summary judgment ("mandatory conversion") because PREPA's motion presented several "matters outside the pleading," which allegedly were not excluded by the court. Docket Document No. 36.

PREPA's assertion is misplaced. PREPA asserts that it raised several "matters outside the pleading," including: (1) Rivera's

Civil No. 06-1538 (JAF)                                    -23-

affirmative defense of qualified immunity; (2) PREPA's argument that Maxon failed to detail actual damages in its complaint; (3) PREPA's "legal and factual discussion" as to why its administrative hold did not violate the automatic stay; and (4) PREPA's "legal and factual discussion as to why officers, directors, or shareholders of Maxon could not bring an action against PREPA for alleged damages suffered by them." Id. However, PREPA's argument fails because these "matters" are merely legal arguments that PREPA raised in its motion to dismiss.

In addition, PREPA concedes that it did not submit any documents in support of its motion to dismiss. Docket Document No. 36. PREPA contests this point, citing to Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992), in support of its argument that a mandatory conversion does not require the movant to affix additional documents or evidence to its motion. Docket Document No. 36. However, the reverse was true in Gibb, where the Eighth Circuit found that the district court should have employed a mandatory conversion because it relied on matters outside the pleadings, including an employment contract, and additional factual allegation concerning the scope and terms of plaintiff's employment. See 958 F.2d at 816; see also In re Maclure, 59 B.R. 109, 111 (Bankr. D.R.I. 1986)(finding that party's submission of an affidavit required mandatory conversion); In re Inforex, Inc., 26 B.R. 515, 520 (Bankr. D. Mass. 1983)(deciding that mandatory conversion was warranted because the court considered matters outside

Civil No. 06-1538 (JAF)                                          -24-

the pleadings, including debtor's Plan of Reorganization, its Order of Confirmation, and a complaint from an a different proceeding).

In this case, PREPA has not presented evidence that was either beyond the scope or in support of the pleadings. See Gibb, 958 F.2d at 816 (stating that a mandatory conversion is required only if the parties present additional evidence that "provides substantiation for and does not merely reiterate what is said in the pleadings"). Instead, PREPA merely presented legal arguments in support of its motion to dismiss. This is insufficient to warrant a mandatory conversion. Moreover, our review of the bankruptcy court's November 21, 2005, Memorandum Opinion, denying PREPA's motion to dismiss did not reveal any reliance on matters outside the pleadings. (See Case No. 06-1598, Ex. 2.)

Accordingly, we find that the bankruptcy did not err in deciding not to convert PREPA's motion to dismiss to a motion for summary judgment.

2.   **Whether The Bankruptcy Court Erred In Finding That PREPA's Executive Director Was Not Protected By Qualified Immunity**

PREPA asserts that the bankruptcy court erred in failing to grant qualified immunity for Rivera. Docket Document No. 36. Trustee-Appellee opposes, asserting that the bankruptcy court decided all matters correctly. Docket Document NO. 35.

"Qualified immunity serves not only as a defense to liability but also as 'an entitlement not to stand trial or face the other

Civil No. 06-1538 (JAF)                                          -25-

burdens of litigation.'" Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  A three-part test is used to determine whether an official is entitled to qualified immunity: (1) "whether plaintiff's allegations, if true, establish a constitutional [or statutory] violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violation the constitutional [or statutory] right at issue." Mihos v. Swift, 358 F.3d 91, 101-2 (1st Cir. 2004).

However, the bankruptcy court did not engage in such analysis. (See Case No. 06-1598, Ex. 2.) Rather, the court tested the sufficiency of Maxon's damages claim against Rivera without reaching the issue of qualified immunity. (Id.) It is unclear why the court failed to reach the issue of qualified immunity after PREPA raised it in its motion to dismiss (Case No. 06-1598, Ex. 7), and Maxon, in its opposition brief (Case No. 06-1598, Ex. 6), responded to and fully briefed the issue as well.

Therefore, we remand the issue of qualified immunity to the bankruptcy court for further findings.

**IV.**

**Conclusion**

For the foregoing reasons, we **AFFIRM** the bankruptcy court's rulings, and **DENY** PREPA's first two appeals in Case Nos. 06-1597 and

Civil No. 06-1538 (JAF)                                        -26-

06-1538, <u>Docket Document Nos. 4, 31</u>. With regard to PREPA's third appeal in Case No. 06-1598, <u>Docket Document No. 36</u>, we **AFFIRM** the bankruptcy court's rulings on all matters with one exception: The question of whether PREPA's Executive Director, Edwin Rivera Serrano, is protected from suit by qualified immunity. Because the bankruptcy court did not address the issue of qualified immunity in its November 21, 2005, Memorandum Opinion, we **REMAND** this issue for further findings.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of May, 2007.

                                    S/José Antonio Fusté
                                    JOSE ANTONIO FUSTE
                                    Chief U.S. District Judge

Certified to be a true & exact copy of the document, or, an authorized electronic docket entry on file
**FRANCES RIOS DE MORAN, CLERK**
U.S. District Court for the
District of Puerto Rico

By: _____
           Deputy Clerk
Date: _____ 5/15/07

```
MIME-Version:1.0
From:prd_docketing@prd.uscourts.gov
To:prd_docketing@prd.uscourts.gov
Bcc:PRD_JAF@prd.uscourts.gov,analluf@prtc.net,condecarmen@microjuris.com,fullana2@ao
Message-Id:<1166138@prd.uscourts.gov>
Subject:Activity in Case 3:06-cv-01598-JAF Puerto Rico Power Authority v. Maxon Engi
```

Content-Type: text/html

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without
charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Puerto Rico

Notice of Electronic Filing

The following transaction was received from ni, entered on 5/11/2007 at 3:18 PM AST and filed on
5/11/2007

**Case Name:**        Puerto Rico Power Authority v. Maxon Engineering Services, Inc.
**Case Number:**    3:06-cv-1598
**Filer:**
**Document Number:** 15

**Docket Text:**
COPY OF OPINION AND ORDER affirming the bankruptcy court's rulings and denying PREPA's first
two appeals in Case No. 06-1597 and 06-1538. With regard to PREPA's third appeal in Case No. 06-
1598, the bankruptcy court's rulings are affirmed on all matters with one exception as stated herein. The
issue of qualified immunity is remanded to the bankruptcy court for further findings.. Signed by Judge
Jose A Fuste on 5/10/07. (ni, )

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051795991 [Date=5/11/2007] [FileNumber=1166136-0
] [9785cd3ec1614db905a0941111195b69cc77c5a8e8ae27bef349030567ea82f9765f
3a77acf2ac63e7a68996aa9bf446bc5e455c10b1ff1c6167c87dbc05e7bf1]]

**3:06-cv-1598 Notice will be electronically mailed to:**

Carmen D. Conde-Torres    condecarmen@microjuris.com,

Isabel M. Fullana    analluf@prtc.net, fullana2@aol.com

Pamela D. Gonzalez-Robinson    licenciadapg@yahoo.com, robertocorretjer@prtc.net

Raul Gonzalez-Toro    rgtlaw@prtc.net, rgonzaleztoro@yahoo.com

CM-ECF LIVE - U.S. District Court for the District of Puerto Rico - Display Receipt Page 2 of 2

**3:06-cv-1598 Notice will be delivered by other means to:**

US Trustee
Edificio Ochoa
500 Tanca Street, Ste.301
San Juan, PR 00901-1922

UNITED STATES GOVERNMENT

# memorandum

DATE : May 15th, 2007

TO : Wilma Jaime
Chief Deputy Clerk
U.S. Bankruptcy Court

FROM : Lida Isis Egele
Operations Manager
U.S. District Court

SUBJECT : CIVIL NO. 06-1598 (JAF)
Lead Case No. 06-1538 (JAF)

BANKRUPTCY CASE NO. 04-4781 (SEK)

Pursuant to Judgment of Chief Judge Jose A. Fuste entered in the above-entitled case on
May 11th, 2007, we enclose the following:

1. Certified copy of Opinion and Order filed on May 11th, 2007 remanding the issue of
qualified immunity to the bankruptcy court for further proceedings. (docket #15).

2. Certified copy of Judgment filed on May 11th, 2007, affirming the bankruptcy court's
rulings and remanding the issue of qualified immunity to the bankruptcy court for
further proceedings (docket #16).

3. Certified copy of docket sheets (Member and Lead Case).

Kindly acknowledge receipt on the copy attached herewith.

Encs.